UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GILBANE BUILDING COMPANY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-1707 |
| | § | |
| EMPIRE STEEL ERECTORS, L.P. AND | § | |
| ADMIRAL INSURANCE COMPANY | § | |
| | § | |
| *Defendant*s. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court is defendants Empire Steel Erectors, L.P. and Admiral Insurance Company's motion for summary judgment and plaintiff Gilbane Building Company's counter-motion for summary judgment.  Dkts. 14,  23.  Upon consideration of the motions, the subsequent responses, the summary judgment record, and the applicable law, the defendants' motion is DENIED and plaintiff's motion is GRANTED IN PART and DENIED IN PART.

### BACKGROUND

**The Underlying Lawsuit**

On January 30, 2007, Michael Parr, an employee of Empire Steel Erectors, L.P. ("Empire Steel") was injured while climbing down a ladder at a construction site. Dkt. 23 at 4.  There is some evidence that the ladder was muddy at the time of the accident and this may have contributed to Parr's fall.  *Id.* at 5.  Parr sustained serious injuries to the left side of his body, requiring extensive surgeries and rehabilitation.  *Id.* at 5.–6.  Parr subsequently filed a lawsuit in Texas state court claiming negligence by Gilbane Building Company ("Gilbane"), the general contractor at the job site, and Baker Concrete, the party responsible for installing and maintaining the ladders at the

construction site. Parr asked for damages of more than $1 million. *Id.*; see also Dkt. 23, Ex. F. Before the case proceeded to trial, Gilbane settled the case with Parr for $165,000.[1]

### The Gilbane–Empire Steel Contract and the Admiral Insurance Policy

In 2006, Gilbane and Empire Steel entered into a Trade Contractor Agreement ("TCA") that ostensibly required Empire Steel to secure insurance coverage for Gilbane as an additional insured under Empire Steel's CGL policy (the "Admiral policy") with Admiral Insurance Company ("Admiral").[2] *Id.* After Parr filed his lawsuit, Gilbane sent both Empire Steel and Admiral a letter requesting defense and indemnification in the underlying lawsuit. Dkt. 23, Ex. I. Admiral, however, refused to defend and indemnify Gilbane, basing its denial of coverage on the plain language of Parr's petition in the underlying lawsuit and its interpretation of the additional insured language of the CGL policy.[3] Dkt. 23, Ex. J.

### The Declaratory Judgment and Breach of Contract Action

Gilbane subsequently filed this action for declaratory judgment and breach of contract against Empire Steel and Admiral. Dkt. 20. In its complaint, Gilbane asks the court to declare that: (1) Gilbane is an additional insured under the Admiral policy; and (2) the underlying lawsuit

---

[1]Baker Concrete also settled with Parr, but this is not of import as they are not a party to this action.

[2]There is a factual dispute between the parties as to whether the TCA actually incorporates the Insurance Specifications Attachment ("ISA"), which required Gilbane to be named as an additional insured. For the purposes of this summary judgment, however, defendants have assumed without conceding that the ISA was attached.

[3] Admiral's Denial of Coverage letter to Gilbane denied coverage for three reasons: (1) there was no evidence that the additional insured requirement was actually incorporated into the Gilbane–Empire Steel contract; (2) the additional insured endorsement only insured against "liability caused by [Empire Steel's] ongoing and completed operations performed for [Gilbane]" and there was no such allegation in the petition of the underlying lawsuit; and (3) there was an exclusion for liability caused by the sole negligence of Gilbane. Dkt. 23, Ex. J. The first of these reasons has been waived by the defendants for the purposes of the summary judgment proceedings. *See* Dkt. 14 at 2. The second reason is not argued as a basis for denial of coverage in the defendants' motion for summary judgment. Lastly, the third reason was not an appropriate basis for denying coverage–this language was not even in effect at the time of the accident. *See* Dkt. 23 at 17, n.9. Rather, the applicable additional insured endorsement has a broader definition of an "additional insured" and does not contain the sole negligence exclusion. Dkt. 27 at 14–19; *see also* Dkt. 23, Exs. R, S. Defendants, however, reaffirm the denial of coverage under the appropriate additional insured endorsement for the reasons set forth in their summary judgment motion. *See* Dkt. 27 at 14.

triggered the additional insured policy, requiring Admiral to both defend and indemnify Gilbane. *Id.* In the alternative, Gilbane seeks breach of contract damages from both Empire Steel and Admiral. Dkt. 20 at 5.

Empire Steel and Admiral now move the court for summary judgment on several of the claims brought by Gilbane, namely the duties to defend and indemnify and the breach of contract against Empire Steel. Gilbane has filed a counter-motion for summary judgment on the claims regarding the duties to defend and indemnify. Gilbane additionally asks the court for summary judgment on its claim against Admiral for breach of contract.

ANALYSIS

**I. Summary Judgment**

A timely motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). Upon a defendant's motion for summary judgment, the plaintiff "must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." FED. R. CIV. P. 56(e). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

3

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick*

*James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

## II. Contract Interpretation

"Texas courts interpret insurance policies according to the rules of contract construction." *de Laurentis v. U.S. Auto. Ass'n*, 162 S.W.3d 714, 721 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). The primary objective of the court is to ascertain the parties' intent, as expressed in the written instrument. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). "[T]he parties' intent is governed by what they said, not by what they *intended* to say but did not." *Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, — F.3d —, 2009 WL 1067587, at *2 (5th Cir. Apr. 22, 2009) (quoting *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006)) (internal quotation omitted).

"If the insurance policy is worded so that it can be given a definite meaning or certain legal meaning, then the policy is not ambiguous. If the policy is not ambiguous, then the court construes the policy as a matter of law." *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, — S.W.3d —, 2008 WL 746522, at *4 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, no pet. h.) (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)) (internal citation omitted). An ambiguity exists where a policy is susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Courts interpreting contractual provisions give terms their plain, ordinary, and generally accepted meanings, unless otherwise defined by the parties. "'Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting

5

expectations nor disputation is sufficient to *create* an ambiguity.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. U.S. Liquids, Inc.*, 271 F. Supp. 2d 926, 932 (S.D. Tex. 2003) (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)).  "[I]f, and only if, the court finds an ambiguity in the contract provisions, particularly in exclusionary clauses, the court should construe the policy strictly against the insurer." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 932; *see also Waffle House, Inc. v. Travelers Indem. Co. of Ill.*, 114 S.W.3d 601, 607 (Tex. App.—Ft. Worth 2003, pet. denied) (cautioning that exclusionary provisions "must be clearly expressed and must not be ambiguously worded").  And, "if the insured's construction of an exclusionary provision is reasonable, it must be adopted, even if the insurer's construction is more reasonable." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 931.

Two distinct duties are at issue in the motion for summary judgment pending before the court: the duty to defend and the duty to indemnify.  The duty to defend determination centers on whether the factual allegations in the petition support a covered claim; whereas, the duty to indemnify is established based on the facts proven in the Underlying Suit.  *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006).  Therefore, the duty to defend is broader; thus an insurer may have a duty to defend, yet no duty to indemnify.  *Solvent Underwriters Subscribing to Energy Ins. Intern., Inc. v. Furmanite Am., Inc.*, — S.W.3d —, 2009 WL 280500, at * 4 (Tex. App.—Houston [14th Dist.] Feb. 5, 2009, no pet. h.).

## III.  Application

Defendants seek summary judgment on several claims in this lawsuit.  Dkt. 14 at 3. Specifically, Empire Steel and Admiral seek summary judgment on Gilbane's claims that: (1) Gilbane is entitled to  contractual indemnity from Empire under the TCA; (2) Admiral had a duty to defend Gilbane as an additional insured under the Admiral policy; (3) Admiral had a duty to

6

indemnify Gilbane for settlement amounts paid to Parr; and (4) Empire Steel breached the contract it had with Gilbane.  Dkt. 14 at 5.  Gilbane, in turn, filed a counter-motion for summary judgment. In its motion, Gilbane asks the court to grant it summary judgment and declare that Admiral did have duties to both defend and indemnify Gilbane.  Additionally, Gilbane asks the court to grant summary judgment on its claim that Admiral breached its contract with Gilbane.  Dkt. 23 at 3–4.

## A.      Contractual Indemnity Obligation

Defendants argue that Gilbane is not entitled to contractual indemnity from Empire Steel under the TCA because the agreement does not meet the fair notice requirement under Texas law. Dkt. 14 at 5–6.  Gilbane states in its response, however, that it has not pled a claim for relief under the contractual indemnity clause.[4]  Dkt. 23 at 3.  The court, therefore, denies as moot defendants' motion for summary judgment on this issue.

## B.      Duty to Defend

"Under the eight-corners rule, the duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy."  *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009).  "Resort to evidence outside the four corners of these two documents is generally prohibited."  *Nautilus Ins. Co.*, 2009 WL 1067587, at *2.  "The duty to defend does not depend upon the truth or falsity of the allegations: 'A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to

---

[4]Gilbane's amended complaint asks the court "to declare that Defendant [Admiral] had a duty to defend and a duty to indemnify [Gilbane] with respect to the Underlying Lawsuit, as required by the provisions of its policy *and* by the terms of the Contract Agreement between its insured, [Empire Steel], and [Gilbane]."  Dkt. 20 at 4–5 (emphasis added).  This could easily be construed, and indeed apparently was construed by defendants, as a claim for indemnification under both the insurance policy and the TCA.  In its response, however, Gilbane clarifies that it seeks indemnification only under the policy.

defend . . . .'" *Nautilus Ins. Co.*, 2009 WL 1067587, at *2 (quoting *GuideOne Elite Ins. Co.*, 197 S.W.3d at 307).

When the petition does not present facts within the scope of the policy's coverage, the insurer is not legally obligated to defend a suit on behalf of the insured. *Pine Oak Builders, Inc.*, 279 S.W.3d at 654. But, if the facts in the pleadings give rise to *any* claim covered under the policy, then the insurer has a duty to defend the insured with respect to all of the claims. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004). Although the allegations in the petition are interpreted liberally and in favor of the insured, the court must not "read facts into the pleadings," "look outside the pleadings," or "imagine factual scenarios which might trigger coverage." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997). The court's inquiry must turn on the facts alleged and the origin of damages, rather than the legal theories asserted. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 931; *see also Am. Auto, Inc. v. Mayfield*, 287 F. Supp. 2d 661, 664 (N.D. Tex. 2003). Nonetheless, "all doubts regarding the duty to defend [are resolved] in favor of the duty." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

Defendants state there is no duty to defend Gilbane in the underlying suit for two reasons: (1) Gilbane is not an additional insured under the Admiral policy; and (2) the facts alleged in the underlying petition do not trigger the additional insured provision.

### 1.    *Scope of the Additional Insured Endorsement*

Defendants urge the court to find that Gilbane is not an additional insured under the policy because the TCA between Gilbane and Empire Steel is unenforceable under Texas law and, therefore, the TCA does not satisfy the definition of an "insured contract" per the terms of the policy. Dkt. 14 at 12. Gilbane, however, argues that the enforceability of the TCA is separate and

distinct from whether the TCA is considered an insured contract for purposes of the policy.

Therefore, even if the TCA is not enforceable as a stand-alone indemnification contract, Gilbane

should still be considered an additional insured under the policy.  *See* Dkt. 32 at 8.

     The Admiral policy contains the following additional insured endorsement:

\*             \*             \*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION**

**This endorsement modifies insurance provided under the following:**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

**Name of Additional Insured Person(s) or Organization(s)**:

Any person or organization that is an owner of real property or personal property on which you are performing ongoing operations, or a contractor on whose behalf you are performing ongoing operation, but *only if coverage as an additional insured is required by written contract or written agreement that is an "insured contract"*, and provided that the "bodily injury", "property damage" or "personal & advertising injury" first occurs subsequent to the execution of the contract or agreement.

. . .

       **A.**     **Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal & advertising injury" caused, in whole or in part, by:

     1. Your acts or omissions; or

     2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

Dkt. 14, Ex. A, CG 20 10 07 04 (emphasis added).  The policy also contains an endorsement that

modifies the definition of an "insured contract":

9

9. "Insured contract" means:

. . .

> f. That part of any other contract or agreement pertaining to your
> business (including an indemnification of a municipality in
> connection with work performed for a municipality) under which you
> assume the tort liability of another party to pay for "bodily injury" or
> "property damage" to a third person or organization, provided the
> "bodily injury" or "property damage" is caused, in whole or in part,
> by you or those acting on your behalf. Tort liability means a liability
> that would be imposed by law in the absence of any contract or
> agreement.

*Id.* at CG 24 26 07 04.

Defendants ask the court to read into the definition of an insured contract the requirement

that the underlying contract or agreement be enforceable under Texas law. Dkt. 27 at 2. That is,

unless the TCA between Empire Steel and Gilbane meets the express negligence test, the TCA is

not an insured contract and Gilbane does not qualify as an additional insured. This interpretation,

however, is at odds with established Fifth Circuit precedent.

In *Mid-Contintent Casualty Co. v. Swift Energy Co.*, the Fifth Circuit was faced with a

situation very similar to the current case. 206 F.3d 487 (5th Cir. 2000). In *Mid-Continent*, an

insurance company filed a declaratory judgment action seeking clarification of its duties to defend

and indemnify an oil company as an additional insured under a contractor's insurance policy. *Id.*

at 489–90. The insurance company argued that because the underlying Master Service Agreement

("MSA") between the oil company and its contractor was not enforceable under Texas law, the MSA

could not be considered an insured contract per the terms of the policy and, therefore, the oil

company was not an additional insured.[5] *Id.* at 492. The court rejected this argument. Assuming

---

[5]The definition of an insured contract in *Mid-Continent* is identical to the definition contained in the Admiral
policy in the present case.

without deciding that the MSA was invalid, the court held that this fact would not preclude the MSA from being considered an insured contract under the policy. *Id.* at 492–93. In support of its holding, the court looked to the diametrically opposed presumptions involved in construing an indemnity agreement and an insurance contract: the former is construed in favor of the indemnitor and the latter in favor of coverage. *Id.* at 492. Therefore, when interpreting the definition of an insured contract, the term must be construed broadly. *Id.* at 493; *see also Travelers Lloyds Ins. Co. v. Pacific Employers Ins. Co.*, No. H-05-2853, 2007 WL 128316, at *5 (S.D. Tex. Jan. 11, 2007) (finding that even though the indemnity clause in the underlying contract was invalid, the underlying contract was sufficient to enforce the additional insured provision).

Defendants cite to *Motiva Enterprises, LLC v. Liberty Mutual Insurance Co.*, No. H-05-1473, 2006 WL 3246039 (S.D. Tex. Nov. 6, 2006), for the proposition that the indemnity clause in the underlying contract must meet the express negligence test in order for the contract to be considered an insured contract. *See* Dkt. 27 at 3. *Motiva*, however, is distinguishable. In that case the parties "appear[ed] to agree that if the indemnity clause is legally enforceable, then it would fall within the policies' definition of an insured contract. Therefore, if the contract is not enforceable, it would not be an insured contract covered by the [policy]." *Motiva*, at *4. In the present case, there is no such agreement between the parties. Furthermore, it is unclear from the opinion whether the parties agreed only to the first proposition and the court inferred the converse proposition, or if the parties agreed to both propositions. However, even if the parties agreed only to the first proposition, it does not follow *a fortiori* that if A is true, the opposite of A is automatically false. Without clarification as to what this statement means or a case citation supporting the proposition, this is not precedent

this court is bound to follow, especially since it contradicts the Fifth Circuit opinion in *Mid-Continent*.[6]

In the present case, the TCA contains two provisions that relate to insurance and indemnification.  Section 5.1 provides that the Empire Steel is to insure Gilbane for claims of, among other things, property damage and bodily injury. Dkt. 14, Ex. C.  Additionally, that section of the TCA incorporates the ISA, which requires Empire Steel to name Gilbane as an additional insured on its CGL policy.  Dkt. 14, Ex. B.  Section 5.2 of the TCA requires Empire Steel to indemnify Gilbane for claims arising out or resulting from Empire Steel's performance (or failure in performance) under the agreement.  Dkt. 14, Ex. C.  While § 5.2 of the TCA may not be enforceable as an indemnification contract under Texas law because it does not meet the express negligence test, the TCA as a whole meets the definition of an insured contract under the policy. The TCA requires Empire Steel to assume Gilbane's tort liability for bodily injury or property damage, which is all that is required by the plain language definition of an insured contract. Furthermore, the fact that the insurance and indemnification provisions are two separate sections in the TCA and that the sections make no reference to one another provides further support.  *See Travelers Lloyds*, at *5 ("This conclusion is all the more compelling here, where the separate insurance and indemnification clauses do not reference each other, are not intertwined or interrelated, and on their face stand independently as separate obligations.").  If the defendants had wanted the definition of an insured contract to be limited to only those contracts that contain enforceable indemnity clauses, then they should have crafted such language into the policy. Gilbane, therefore, qualifies as an additional insured under the policy.

---

[6]Additionally, *Motiva* later cites *Mid-Continent* approvingly.  *Motiva*, at *9.

*2. Triggering the Additional Insured Endorsement*

In the alternative, defendants argue that there is no duty to defend Gilbane because the additional insured provision was not "triggered" by Parr's underlying petition. Dkt. 14 at 13. Within the Admiral policy, both the additional insured endorsement and the definition of an insured contract require the injury to be "caused, in whole or in part, by" Empire Steel or those acting on its behalf. Dkt. 14, Ex. A. Parr's third amended complaint alleges Gilbane's negligence caused his injuries.[7] Dkt. 23, Ex. A. Therefore, the defendants argue, under the eight corners rule, the petition does not trigger coverage because it does not allege Empire Steel or someone acting on its behalf caused Parr's injuries. Dkt. 14 at 14. Gilbane, however, points out that Parr, as an employee of Empire Steel at the time of the accident, was statutorily barred from naming Empire Steel as a liable party in the petition because the company had a worker's compensation policy in place.[8] Dkt. 23 at 13–14. Furthermore, under Texas's comparative responsibility statute,[9] Parr's own negligence is always at issue, even in the absence of an allegation in his pleading to that effect. Dkt. 32 at 5. In other words, Parr himself, while acting within the course and scope of his employment for Empire Steel, could have been the cause of his own injuries. Thus, someone acting on behalf of Empire Steel potentially caused, in whole or in part, the injury and the duty to defend is triggered.

This seems to be an issue of first impression under Texas law. The court can find no case, nor did the parties cite any case, in which a general contractor sought coverage under the new 2004 ISO CG 20 10 additional insured endorsement in a third-party over action because of possible

---

[7] Parr's third-amended complaint is the live complaint for the purposes of these motions for summary judgment.

[8] *See* TEX. LAB. CODE § 408.001.

[9] TEX. CIV. PRAC. & REM. CODE § 33.001 *et seq.*

contributory negligence on the part of the injured employee.[10]  The new 2004 ISO additional insured endorsement replaced the traditional "arising out of" language with "caused by" language.  BRUNER & O'CONNOR ON CONSTRUCTION LAW, § 11:63.50.  Texas courts have liberally interpreted the older "arising out of " language, requiring only a "causal connection or relation."  *Mid-century Ins. Co. of Tex. v. Lindsey.*, 997 S.W.2d 153, 156 (Tex. 1999).  In other words, the "arising out of" language requires only but-for causation; not direct or proximate causation.  *Utica Nat'l Ins. Co.  of Tex. v. Am. Indemnity Co.*, 141 S.W.3d 198, 203 (Tex. 2004).  In the construction context, the mere fact that an employee is working on the job site at the time of the injury would likely be enough to trigger the additional insured coverage, even if the additional insured were solely negligent.  *See e.g.*, *Admiral Ins. Co. v. Trident NGL, Inc.*, 988 S.W.2d 451, 455 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) ("We hold that, because the accident in this case occurred to a KD employee while the employee was on the premises for the purpose of performing preventive maintenance on the compressor that exploded, the alleged liability for the employee's injuries "arose out of KD's operations," and, therefore, was covered by the "additional insured" provision."); *McCarthy Bros. Co. v. Continental Lloyds Ins. Co.*, 7 S.W.3d 725, 730–31 (Tex. App.—Austin 1999, no pet.) (finding coverage for the additional insured because the employee's injuries occurred while he was "carrying out a necessary part of his job.").

The 2004 ISO revisions sought to narrow the coverage afforded an additional insured by injecting fault into the analysis.  BRUNER & O'CONNOR ON CONSTRUCTION LAW, § 11:63.50.  The new CG 20 10 additional insured endorsement, included in the Admiral policy, requires the injury to be "caused, in whole or in part, by" the named insured in order for coverage to be triggered.  *Id.*

---

[10]A third-party over action is one in which an injured employee of the named insured brings suits against a party listed as an additional insured on the policy.  *See* BRUNER & O'CONNOR ON CONSTRUCTION LAW, § 11:63.50.

Additionally, the new endorsement requires liability to arise out of the "acts or omissions" of the named insured, or someone acting on its behalf—not simply the named insured's operations. *Id.* Thus, in the absence of fault of the named insured, there should be no coverage for the additional insured. *Id.* In third-party over actions, however, this "fault" requirement has led to some concern. As one commentator noted, in third-party over actions

> a general contractor with additional insured status in the subcontractor's CGL policy has historically been covered for these claims. Since the employee is barred by the worker's compensation statute from bringing a suit against his own employer, these suits will generally not mention the employer, alleging only negligence against the general contractor additional insured. The concern is that, since the suit does not allege any degree of fault against the named insured employer, CGL insurers will take the position that the employee's injuries were not "caused, in whole or in part, by" the subcontractor (named insured).
>
> Of course, the subcontractor usually will have been partially at fault, even though the suit does not contain allegations against it. . . . The only allegations that would fall clearly outside the coverage provisions of the new additional insured endorsements, however, would be explicit allegations of the additional insured's sole fault.

*Id.* (quoting Jack P. Gibson & Jeff Woodward, *2004 ISO Additional Insured Endorsement Revisions, ABA Forum on the Construction Industry Winter Meeting* (Jan. 27, 2005)).

The "caused, in whole or in part, by" language was considered in *American Empire Surplus Lines Insurance Co. v. Crum & Forster Specialty Insurance Co.,* No. H-06-004, 2006 WL 1441854 (S.D. Tex. May 23, 2006). In *American Empire*, independent contractors, rather than employees, of the named insured brought a suit against the general contractor additional insured.[11] The central question facing the court was whether the "whole or in part" language limited the additional insured's coverage to those situations in which it was being held derivatively or vicariously liable

---

[11]The plaintiffs' status as independent contractors rather than employees is inferred because the plaintiffs were able to add the named insured as a defendant in the underlying suit. This would not have been possible unless: (1) the plaintiffs were independent contractors or (2) the named insured did not participate in the Texas worker's compensation scheme.

for the named insured's actions or if the phrase was broader and covered all injuries caused in some way by the named insured. *Id.* at *6. The court found that the phrase could be given a definite meaning and legal effect, and stated:

> The focus of the definition of additional insured coverage in the "whole or in part" sentence is on whether Plaintiffs allege a theory in the operative pleading in the Underlying Lawsuit under which [the additional insured] could be held liable for conduct by [the named insured] that "caused" injury to a third party in any way. The sentence does not address the conduct of the other wrongdoer or wrongdoers, whether they be the additional insured or not.

*Id.* at *7. Therefore, the inquiry focuses on whether the facts in the underlying petition set forth a theory that the named insured in some way caused the injury.

Another case, *Casualty Insurance Co. v. Northbrook Property & Casualty Co.*, also offers some guidance. 501 N.E.2d 812 (Ill. App. 1986). *Casualty* is a typical third-party over action in which the named insurer's policy provided additional insured coverage to the general contractor for liability "arising out of" operations performed by the named insured. While the court found the "arising out of" language itself would have triggered the duty to defend the additional insured, the policy also contained an exclusion for:

> bodily injury or property damage arising out of any acts or omission of the [additional insured general contractor] or any of his employees, other than the general supervision of the work performed for the [additional insured general contractor] by the [named insured subcontractor].

*Id.* at 476–77. In effect, this language precluded coverage unless the named insured was at least partly at fault—making it similar to the additional insured endorsement in the Admiral policy. Additionally, and just as in the present case, the petition in the underlying lawsuit alleged negligence only by the additional insured and not the named insured. *Id.* at 477. The insurer argued that this

16

negated coverage because there was no specific allegation in the petition that the named insured was at least partly at fault. *Id.* The court, however, found there was a duty to defend and stated:

> [The insurer's] argument that, because the underlying complaint contains no allegations of negligence against the named insured . . . ignores [the named insured's] inchoate immunity under the Worker's Compensation Act to a suit by its employee.

*Id.* In other words, a petition that does not, and cannot, state allegations of negligence against the employer does not indicate that the employer was not at fault, only that it is statutorily immune from suit.

The Parr petition alleges that "[Parr's] injuries were brought about to occur, directly and proximately by reason of the negligence of [Gilbane]"." Dkt. 23, Ex. A. The injuries occurred because the Houston area had received a large amount of rainfall that month, resulting in a lot of mud at the work area. *Id.* In addition to these muddy conditions, Gilbane did not provide for working elevators at all times, thus requiring the plaintiff to walk down the ladder with muddy boots where he ultimately slipped and fell. *Id.* The petition also states that "Plaintiff was an employee of [Empire Steel] performing work under a contract between [Empire Steel] and Gilbane, for the construction of the Texas Department of Transportation Headquarters building in Houston, Texas." *Id.*

After reviewing the eight-corners of the petition and the Admiral policy, and in light of *American Empire* and *Casualty*, the court cannot say that Parr himself, acting on behalf of Empire Steel in the course of his job, was not possibly a contributing, proximate cause of his injuries. The plain language of the petition states that he was injured while working for Empire Steel. The petition also states that the injuries occurred when Parr was walking down the ladder with muddy boots. This raises at least an inference that Parr himself could have been partly at fault. *See D.R.*

*Horton-Tex., Ltd. v. Markel Int'l Ins. Co., Ltd.*, —S.W.3d— 2006 WL 3040756, at *4 (Tex. App.—Houston [14th Dist.] Oct. 26, 2006) (The court "may draw inferences from the petition that may lead to a finding of coverage.  An inference is a fact or proposition drawn from an admitted or otherwise proven fact." (citation omitted)),  *aff'd in part and rev'd in part*, 2009 WL 4728008. Additionally, under Texas's comparative responsibility statute, Parr's negligence would have been at issue should Gilbane have been found liable in the underlying suit.[12]  The fact Parr's petition does not mention Empire Steel's possible negligence speaks only to the fact that the company is statutorily immune from suit, not that it is without fault.  After resolving any ambiguities in favor of coverage, the facts in the underlying petition allege a possible theory under which Gilbane could be liable for conduct by Empire Steel or someone on its behalf.  This is sufficient to trigger the duty to defend.

## C.    Duty to Indemnify

"Unlike the duty to defend, which arises when a petition seeking damages alleges facts that potentially support claims covered by a liability policy, the duty to indemnify arises from proven, adjudicated facts." *Classic Performance Cars, Inc. v. Acceptance Indem. Ins. Co.*, 464 F. Supp. 2d 652, 663–64 (S.D. Tex. 2006) (citing *Hartrick v. Great Am. Lloyds Ins. Co.,* 62 S.W.3d 270, 275 (Tex. App.—Houston [1st Dist.] 2001, no pet.) and *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex.1997)).  Evidence from the underlying case is usually necessary to establish an insurer's duty to indemnify.  *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co., Ltd.*, —S.W.3d—, 2009 WL 4728008, at *3 (Tex. Feb. 12, 2010).  "This is especially true when the underlying liability dispute is resolved before a trial on the merits and there was no opportunity to develop the

---

[12]Examining the effect of the Texas comparative responsibility statute on the underlying suit is not the same as looking to extrinsic evidence.  *Cf. Century Surety Co. v. Hardscape Constr. Specialities, Inc.*, 578 F.3d 262 (5th Cir. 2009) (examining the differences between tort and contract actions in Texas courts to determine if there was coverage).

evidence." *Id.*

At the outset, defendants' motion for summary judgment on the issue of duty to indemnify was predicated on a finding that there was no duty to defend Gilbane. Dkt. 14 at 16. Having found there was such a duty to defend, defendants' motion for summary judgment on this issue is denied.

Gilbane also moves the court for summary judgment on the issue of duty to indemnify. Gilbane alleges that based on the snippets of deposition testimony provided to the court and because the trial court in the underlying suit allowed Empire Steel to be named as a responsible third party, there is a duty to indemnify Gilbane as a matter of law. Dkt. 23 at 15. This evidence, however, does not constitute the actual facts needed to create the duty to indemnify. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997). Additionally, even within the evidence submitted to the court, there is at least a genuine issue of material fact raised as to whether Parr was a contributing cause of the accident. *See* Dkt. 27 at 14. Because the underlying case settled before trial, there are insufficient facts to warrant summary judgment on this issue and the actual facts will need to be developed. *See Nat'l Union Fire Ins. Co of Pittsburgh, Pa. v. Puget Plastics Corp.*, 532 F.3d 398, 404 (5th Cir. 2008). Therefore, Gilbane's motion for summary judgment as to the duty to indemnify is denied.

## D.    Breach of Contract Claims

In its complaint, Gilbane asked the court to find that Empire Steel and Admiral breached their contractual duties to Gilbane if the court were to determine that the duties to defend and indemnify did not arise in this case. Dkt. 20. Defendants ask for summary judgment with respect to the claim against Empire Steel and Gilbane asks for summary judgment with respect to the claim against Admiral. Dkt. 14 at 17; Dkt. 23 at 23. However, because Gilbane pled the breach of contract claims only in the alternative and because, for the reasons set forth above, it has been

determined there was at least a duty to defend Gilbane in the underlying Parr suit, the court does not reach these issues at  this time. Both defendants' motion and Gilbane's motion for summary judgement on these claims are, therefore, denied.

### CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is DENIED. Gilbane's counter-motion for summary judgment is GRANTED IN PART and DENIED IN PART. Specifically, Gilbane's motion for summary judgment is GRANTED as to the duty to defend and DENIED with respect to the duty to indemnify and the breach of contract claim against Admiral.

It is so ORDERED.

Signed at Houston, Texas on February 23, 2010.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY