UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GILBANE BUILDING COMPANY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-1707 |
| | § | |
| EMPIRE STEEL ERECTORS, L.P. AND | § | |
| ADMIRAL INSURANCE COMPANY | § | |
| | § | |
| *Defendant*s. | § | |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

INTRODUCTION

On January 30, 2007, Michael Parr, an employee of Empire Steel Erectors, L.P. ("Empire Steel") was injured while climbing down a ladder at a construction site. Parr sustained serious injuries to the left side of his body, requiring extensive surgeries and rehabilitation. Parr subsequently filed a lawsuit in Texas state court ("Underlying Lawsuit") claiming negligence by Gilbane Building Company ("Gilbane"), the general contractor at the job site, and Baker Concrete, the party responsible for installing and maintaining the ladders at the construction site. Parr asked for damages of more than $1 million. Gilbane settled the case with Parr before trial for $165,000.[1]

Gilbane filed this lawsuit asserting that a 2006 Trade Contractor Agreement ("TCA") with Empire Steel Erectors, LP ("Empire Steel") required Empire Steel to secure insurance coverage for Gilbane as an additional insured under a CGL policy (the "Admiral policy") with Admiral Insurance Company ("Admiral"). Gilbane thereafter sent both Empire Steel and Admiral a letter requesting

---

[1]     Baker Concrete also settled with Parr, but is not a party to this lawsuit.

defense and indemnification in the Underlying Lawsuit.  Admiral refused to defend and indemnify Gilbane, basing its denial of coverage on the plain language of Parr's petition in the Underlying Lawsuit and its interpretation of the additional insured language of the CGL policy.

Empire Steel and Admiral both moved for summary judgment on the issues of the duties to defend and to indemnify, and the court ruled that Gilbane qualifies as an additional insured under the Admiral policy.  Dkt. 35 at 12.  The court also ruled that there were sufficient factual allegations in the underlying petition to support an inference that Parr was himself negligent while performing his duties on behalf of Empire Steel, and that Parr's negligence may have been at least a contributing cause of his own injuries.  *Id*. at 13.  The factual allegations in the petition, therefore, were found to have triggered the duty to defend.  *Id*. at 13.  The court concluded as a matter of law that Gilbane, as an additional insured under the Admiral policy, was owed a duty to defend in the Underlying Lawsuit.  *Id.* at 18.  The court denied the parties' motions for summary judgment on the issue of indemnity, however, because resolution of that issue requires factual findings that could not be made in the context of summary judgment.  *Id.* at 19.

At the parties' request, the Court conducted a trial of this matter by written submission on stipulated facts.  The court therefore makes the following findings of fact and conclusions of law.

FINDINGS OF FACT[2]

1.      In the Underlying Lawsuit, Michael Parr sought recovery for injuries he sustained while climbing down a ladder in the performance of his job duties as an employee of Empire Steel. Parr, a steelworker, had completed the day's activities, and was preparing to leave for the day.  He climbed a ladder to the third floor to locate an extension cord, which he planned to use to plug in his

---

[2]      All facts are stipulated, and are drawn from the parties' Joint Pretrial Order.  Dkt. 38.

scissor lift to charge overnight.  He found an extension cord, and began descending the ladder to return to the second floor.  Parr slipped on the third rung, falling to the deck at the bottom of the ladder.  Gilbane's employee Tom Snider responded to the scene almost immediately after Parr's fall.  Parr remarked to Snider that his [Parr's] "feet got wrapped up in the extension cord" that Parr was carrying.

       2.      At the time of the accident, Parr was performing work pursuant to a Trade Contractor Agreement between Empire Steel and Gilbane.  A true and correct copy of that contract is attached to the Joint Pretrial Order.  Dkt. 38-1.

       3.      Parr alleged that he sustained serious injuries to the entire left side of his body, including multiple closed pelvic fractures with a disruption of the pelvic circle, a closed displaced fracture of the humerus, and a closed displaced fracture of the radius.  He was transported to St. Joseph's Medical Center via ambulance, where he underwent extensive surgeries including intramedullary rodding of the left humerus, open reduction internal fixation of the left distal radius, and open reduction internal fixation of the displaced pelvic iliac wing fracture.  After a thirteen-day hospital stay, he continued treatment with surgeon Dr. Allen Criswell for seven months, including several weeks of physical therapy.  He was then referred to New Haven Clinic, a pain management clinic, where he received treatment and pain medications through November, 2007.  Parr's treating physician rated him with a 12% whole person impairment due to the injuries he sustained in the accident.  As of November 30, 2007, Parr still experienced pain in his wrist, shoulder, and pelvis, and had very limited range of motion in his left wrist and shoulder.  The treating surgeon reported that Parr could develop impingement syndrome in his shoulder, which could require removal of the intramedullary rod or a subacromial decompression.

4.      As a result of the injuries he sustained in this accident, Parr incurred approximately $85,000 worth of medical bills, sustained $15,000 in past lost wages, and claimed significant scarring, impairment, and pain and suffering.  Empire Steel was a Texas Workers Compensation subscriber and Parr filed for and received workers' compensation benefits.  He filed the Underlying Lawsuit against Gilbane and Baker Concrete, seeking over $1 million in damages and asserting claims of negligence.  True and correct copies of Parr's First Amended Original Petition, Second Amended Original Petition, and Third Amended Original Petition are attached to the Joint Pretrial Order.  Dkts. 38-2, 38-3 and 38-4.

5.      The trial court in the Underlying Lawsuit signed an order granting Gilbane, Inc. and Gilbane Building Company's Designation of Empire Steel as a Responsible Third Party on April 9, 2008.  A true and correct copy of the order is attached to the Joint Pretrial Order.  Dkt. 38-5.

6.      On February 15, 2008, Gilbane tendered the Underlying Lawsuit to Empire Steel and its insurer Admiral, seeking defense and indemnification as an additional insured under the Admiral policy issued to Empire Steel.

7.      On April 23, 2008, Admiral denied the tender and disclaimed coverage for Gilbane's claim.  Dkt. 38-6.

8.      On June 30, 2008, Gilbane and Michael Parr entered into a settlement agreement pursuant to which Gilbane paid Parr $165,000 in exchange for dismissal of the Underlying Lawsuit.

9.      Gilbane incurred $13,814.21 in attorneys' fees and expenses defending the Underlying Lawsuit after the suit was tendered to Admiral and Empire Steel.  Specifically, Gilbane paid $4,421.55 to the Law Offices of Kilpatrick & White and $9,572.66 to Mary Alice Parsons.

10.     As of May 31, 2010, Gilbane has incurred $39,347.09 in attorneys' fees and expenses in the prosecution of this action for declaratory judgment.  Gilbane will incur additional attorneys' fees and expenses in this action through the date of trial.

11.     The Admiral policy under which coverage is sought is an occurrence based CGL policy, Policy No. CA000007123-01, issued to Empire Steel for the period of June 5, 2006 to June 5, 2007.  A true and correct copy of the policy is attached to the Joint Pretrial Order.  Dkt. 38-7.

12.     The Admiral policy contains the following additional insured endorsement:

*                    *                    *

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION**

**This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

**Name of Additional Insured Person(s) or Organization(s)**:
Any person or organization that is an owner of real property or personal property on which you are performing ongoing operations, or a contractor on whose behalf you are performing ongoing operation, but *only if coverage as an additional insured is required by written contract or written agreement that is an "insured contract"*, and provided that the "bodily injury", "property damage" or "personal & advertising injury" first occurs subsequent to the execution of the contract or agreement.

. . .

**A.      Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal & advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

> 2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

Dkt. 38-7 at 64 (emphasis added).

13.     The policy also contains an endorsement that modifies the definition of an "insured contract" to mean:

> f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*Id.* at 30.

14.     Pursuant to the November 2006 TCA between Gilbane and Empire Steel (Dkt. 38-1), Empire agreed to secure commercial liability insurance coverage naming Gilbane Building Company as an "additional insured" on a primary, non-contributing basis, and to maintain that coverage for the duration of the project including warranty work.

15.     The Schedule "A"-Insurance Specifications which set forth the insurance requirements was attached to and incorporated into the TCA when that agreement was signed.

16.     Parr was acting in the course and scope of his employment for Empire Steel at the time of his injury at issue in the Underlying Lawsuit.

17.     Parr's own conduct was a contributing, proximate cause of his damages claimed in the Underlying Lawsuit.

18.     The conduct of Empire Steel's employee(s) was a contributing, proximate cause of Parr's damages claimed in the Underlying Lawsuit.

19.     A jury in the Underlying Lawsuit would have found Michael Parr or his employer, Empire Steel, 1% or more responsible for causing the occurrence and/or injuries at issue.

20.     The potential percentage of responsibility attributable to Gilbane, if any, for causing the occurrence and/or injuries at issue in the Underlying Lawsuit would not impact Gilbane's right as an additional insured under the Admiral policy to indemnification from Admiral, if any, in any way.

21.     The $165,000 settlement paid by Gilbane to Michael Parr in the Underlying Lawsuit was reasonable.

22.     The $13,814.21 in attorney's fees and expenses incurred by Gilbane in defending the Underlying Lawsuit after tender was reasonable and necessary, and was based on a reasonable number of hours worked at a reasonable hourly rate.

23.     The attorneys' fees incurred by Gilbane in the prosecution of this declaratory judgment action, which total $39,347.09 as of May 31, 2010, was reasonable and necessary, was based on a reasonable number of hours worked and a reasonable hourly rate, and continue to accrue.

24.     Gilbane will incur reasonable and necessary attorneys' fees of $40,000 if Defendants appeal this Court's judgment to the Fifth Circuit Court of Appeals.

### CONCLUSIONS OF LAW

*Jurisdiction and Venue*

1.     The court has jurisdiction over the parties and over the subject matter in this case pursuant to 28 U.S.C. §1332 (diversity jurisdiction) and § 2201 (declaratory judgments), *et seq.*; Fed. R. Civ. P. 57.

7

2.      Venue is proper in this case because defendant Empire Steel's principal place of business is located within this district.  28 U.S.C. § 1391(a)(1).

*Choice of law and Contract Interpretation*

3.      Texas substantive law applies to the issues in this case.  *Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938).

4.      "Texas courts interpret insurance policies according to the rules of contract construction." *de Laurentis v. U.S. Auto. Ass'n*, 162 S.W.3d 714, 721 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  The primary objective of the court is to ascertain the parties' intent, as expressed in the written instrument.  *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994).  "[T]he parties' intent is governed by what they said, not by what they *intended* to say but did not." *Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 556 F.3d 452, 455 (5th Cir. 2009) (quoting *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006)) (internal quotation omitted).

5.      "An insurance policy is only ambiguous if its plain language is amenable to more than one reasonable interpretation." *Nautilus*, 556 F.3d at 455.  An ambiguity exists where a policy is susceptible to more than one meaning.  *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).  Courts interpreting contractual provisions give terms their plain, ordinary, and generally accepted meanings, unless otherwise defined by the parties.   "'Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to *create* an ambiguity.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. U.S. Liquids, Inc.*, 271 F. Supp. 2d 926, 932 (S.D. Tex. 2003) (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)).  "[I]f, and only if, the court finds an ambiguity in the contract provisions, particularly in exclusionary clauses, the court should construe the policy strictly against the insurer." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 932; *see also Waffle House, Inc. v. Travelers*

8

*Indem. Co. of Ill.*, 114 S.W.3d 601, 607 (Tex. App.—Ft. Worth 2003, pet. denied) (cautioning that exclusionary provisions "must be clearly expressed and must not be ambiguously worded"). And, "if the insured's construction of an exclusionary provision is reasonable, it must be adopted, even if the insurer's construction is more reasonable." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 931.

6.      Two distinct duties are at issue in this case: the duty to defend and the duty to indemnify. The duty to defend determination centers on whether the factual allegations in the petition support a covered claim, while the duty to indemnify is established based on the facts proven in the Underlying Suit. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006). The duty to defend is broader; thus an insurer may have a duty to defend, yet no duty to indemnify. *Solvent Underwriters Subscribing to Energy Ins. Int'l., Inc. v. Furmanite Am., Inc.*, 282 S.W.3d 661, 667 (Tex. App.—Houston [14th Dist.] 2009, no pet. h.).

*The Duty to Defend*

7.      "Under the eight-corners rule, the duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009).

8.      When the petition does not present facts within the scope of the policy's coverage, the insurer is not legally obligated to defend a suit on behalf of the insured. *Pine Oak Builders, Inc.*, 279 S.W.3d at 654. But, if the facts in the pleadings give rise to *any* claim covered under the policy, then the insurer has a duty to defend the insured with respect to all of the claims. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004).

9.      The court's inquiry must turn on the facts alleged and the origin of damages, rather than the legal theories asserted. *Am. Auto, Inc. v. Mayfield*, 287 F. Supp. 2d 661, 664 (N.D. Tex.

2003). Nonetheless, "all doubts regarding the duty to defend [are resolved] in favor of the duty." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

10. In the present case, the TCA contains two provisions that relate to insurance and indemnification. Section 5.1 provides that the Empire Steel is to insure Gilbane for claims of, among other things, property damage and bodily injury. Dkt. 14, Ex. C. Additionally, that section of the TCA incorporates the Insurance Specifications Attachment ("ISA"), which requires Empire Steel to name Gilbane as an additional insured on its CGL policy. Dkt. 14, Ex. B. Section 5.2 of the TCA requires Empire Steel to indemnify Gilbane for claims arising out or resulting from Empire Steel's performance (or failure in performance) under the agreement. Dkt. 14, Ex. C.

11. Defendants ask the court to read into the definition of an "insured contract" under the Admiral policy the requirement that the TCA be enforceable under Texas law before it may be considered an insured contract. The issue of whether Section 5.2 of the TCA is itself enforceable as an indemnification contract under Texas law is irrelevant, because the TCA as a whole meets the definition of an "insured contract" under the Admiral policy, and that is all that is required for coverage. *Mid-Contintent Casualty Co. v. Swift Energy Co.*, 206 F.3d 487, 492-493 (5th Cir. 2000) (even assuming that underlying agreement was not itself enforceable would not preclude finding that the agreement qualified as insured contract under specific language of the insurance policy for purposes of determining coverage).

11. The TCA requires Empire Steel to assume Gilbane's tort liability for bodily injury or property damage. Gilbane is, therefore, an "additional insured" under the Admiral policy, and the court must next determine if the duty to defend was "triggered" in this case by the allegations in the Underlying Lawsuit.

10

12.    The Admiral policy incorporates a 2004 ISO revision that sought to narrow the coverage afforded an additional insured by injecting fault into the analysis. BRUNER & O'CONNOR ON CONSTRUCTION LAW, § 11:63.50.  The new CG 20 10 additional insured endorsement requires the injury to be "caused, in whole or in part, by" the named insured in order for coverage to be triggered.  *Id.*  Thus,  in the absence of fault of the named insured, there should be no coverage for an additional insured.  *Id.*

13.    The Parr petition alleges that "[Parr's] injuries were brought about to occur, directly and proximately by reason of the negligence of [Gilbane]." Dkt. 23, Ex. A.  The injuries occurred because the Houston area had received a large amount of rainfall that month, resulting in a lot of mud at the work area.  *Id.*  In addition to these muddy conditions, Gilbane did not provide for working elevators at all times, thus requiring the plaintiff to walk down the ladder with muddy boots where he ultimately slipped and fell.  *Id.*  The petition also states that "Plaintiff was an employee of [Empire Steel] performing work under a contract between [Empire Steel] and Gilbane, for the construction of the Texas Department of Transportation Headquarters building in Houston, Texas." *Id.*

14.    After reviewing only the eight-corners of the petition and the Admiral policy, the court cannot say that Parr himself, acting on behalf of Empire Steel in the course of his job, was not possibly a contributing, proximate cause of his injuries.  The plain language of the petition states that he was injured while working for Empire Steel.  The petition also states that the injuries occurred when Parr was walking down the ladder with muddy boots.  This raises at least an inference that Parr himself could have been partly at fault.  *See D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 773, 780 (Tex. App.—Houston [14th Dist.] Oct. 26, 2006) (The court "may draw inferences from the petition that may lead to a finding of coverage.  An inference is a fact or

proposition drawn from an admitted or otherwise proven fact." (citation omitted)), *aff'd in part and rev'd in part on other grounds*, 300 S.W.3d 740 (Tex. 2009), *reh'g denied* (Feb 12, 2010).

15.     The inference that Parr was at least partly at fault in causing his own injuries is sufficient to trigger the duty to defend under the Admiral policy. *Id.*

16.     Admiral's failure to defend Gilbane in the Underlying Lawsuit after tender of the defense was a breach of the insurance contract. Gilbane is entitled to all reasonable legal fees and expenses incurred in Gilbane's defense of the Underlying Lawsuit, which the parties have stipulated total $13,814.21. *American Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 490 (5th Cir. 2004). The court takes judicial notice of the reasonableness of these fees.

*The Duty to Indemnify*

17.     The difference between the duty to defend and the duty to indemnify is the difference between alleging the elements of coverage in a complaint, and proving the elements of coverage at trial. See *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740 (Tex. 2009) ("While analysis of the duty to defend has been strictly circumscribed by the eight-corners doctrine, it is well settled that the 'facts actually established in the underlying suit control the duty to indemnify.'" (quoting *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex.2009)).

18.     The court has already determined as a matter of law that Gilbane qualifies as an additional insured under the Admiral policy. Gilbane is entitled to indemnity, therefore, if Empire Steel, in an "insured contract," assumed tort liability for Gilbane for bodily injury "caused, in whole or in part" by Empire or someone acting on Empire's behalf. Dkt. 38-7 at 30.

19.     The TCA qualifies as an "insured contract" under the Admiral policy. *Mid-Contintent*, 206 F.3d at 492-493.

20.     Parr's conduct, acting on behalf of Empire Steel, was a contributing, proximate cause of his own damages claims in the Underlying Lawsuit, for which Parr sought to hold Gilbane liable, making the claim covered under the Additional Insured endorsement of the Admiral policy. Dkt. 38-7 at 30.

21.     Admiral's failure to indemnify Gilbane is a breach of the insurance contract, resulting in damages to Gilbane, as an additional insured owed indemnification, in the full amount of the settlement paid to Michael Parr to resolve the Underlying Lawsuit, totaling $165,000.00.

22.     Admiral's wrongful refusal to defend and indemnify Gilbane in the Underlying Lawsuit entitles Gilbane to recover reasonable and necessary legal fees and expenses associated with prosecuting this action for declaratory judgment, including costs of a possible appeal, in the stipulated amount of $79,347.09.  *American Home Assur. Co.*, 378 F.3d at 492 (5th Cir. 2004).  The court takes judicial notice of the reasonableness of these fees.

*Prejudgment Interest*

23.     State law governs the issue of prejudgment interest in a diversity case.  *Concise Oil & Gas Partnership v. Louisiana Intrastate Gas Corp.*, 986 F.2d 1463, 1472 (5th Cir. 1993).  Texas law permits Gilbane to recover from Admiral prejudgment interest on the $165,000.00 damages arising from settlement of the Underlying Lawsuit, but Gilbane is not entitled to prejudgment interest on the award of attorneys' fees.  TEX. CIV. PRAC. & REMEDIES CODE § 38.001, *et seq*.;  *Enserich Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1501 (5th Cir. 1992).

24.     Under Texas law, prejudgment interest accrues at the rate of 5% per annum when, as is the case here, the prime rate as published by the Board of Governors of the Federal Reserve System is less than 5%.  TEX. FIN. CODE ANN. § 304.003(a) and (c)(2) (Vernon 2008).  Accordingly, the court holds that Gilbane is entitled to recover prejudgment interest at the rate of 5% per annum,

computed as simple interest, from May 29, 2008, until the date of judgment.  *Johnson & Higgins of*

*Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 532 (Tex. 1998) (prejudgment interest computed

as simple interest from date complaint filed).

*Gilbane's Breach of Contract Claim Against Empire Steel*

25.    Gilbane's breach of contract claim against Empire Steel is entirely dependent upon

a finding that Gilbane was **not** an additional insured under the Admiral Policy.  *See*, *e.g.*, *Voisin v.*

*O.D.E.C.O. Drilling Co.*, 744 F.2d 1174, 1179 (5th Cir. 1984) (holding that party who breaches

promise to obtain insurance for other party is liable for breach-of-contract damages for the amount

that would have been covered by the insurer had the insurance been obtained).  Since the court has

found that Empire Steel did obtain the contracted-for coverage, Gilbane's breach of contract claim

against Empire Steel is DISMISSED.

CONCLUSION

Final judgment will be entered in favor of Gilbane and against Admiral in accordance with

the findings of fact and conclusions of law set forth above.

It is so ORDERED.

Signed at Houston, Texas on November 16, 2010.

_____

Gray H. Miller

United States District Judge

14